UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

KATHLEEN M. GALLAGHER (a/k/a
Kathy M. Gallagher, d/b/a
Shear Magic Hair Designers),

                                      Debtor.

CASE NO. 07-22720

DECISION & ORDER

_____

KENNETH W. GORDON, As Trustee,

                                      Plaintiff,

                V.

KENNETH C. KINNEY,

                                      Defendant.

AP #09-2003

_____

## BACKGROUND

On October 30, 2007, Kathleen M. Gallagher (the "Debtor") filed a petition initiating a Chapter 7 case. On the Initial Schedules and Statements required to be filed by Section 521 and Rule 1007 and her Amended Schedules (the "Schedules") the Debtor indicated that she had: (1) general unsecured debts totaling $48,484.00;[1] (2) real property, consisting solely of her residence on Lake Road in Webster, New York (the "Lake Road Property"),

---

[1] The Debtor filed an Amended Schedule F - Creditors Holding Unsecured Nonpriority Claims, on January 4, 2008, which is identical to the Debtor's original Schedule F filed on October 30, 2007, except that the Debtor added a claim for Genesee Regional Bank of $413.00 incurred in October, 2007, for a checking line of credit, thus the Debtor's total unsecured debt is $48,484.00.

valued by the Debtor at $162,000.00, subject to a GMAC Mortgage secured claim of $92,311.00, based upon a refinance of a first mortgage in October 2002, and a Keybank secured claim of $26,021.00, based upon an August 2003 home equity mortgage; and (3) personal property totaling $10,914.00, including: (a) a business checking account with Regional Bank with a balance at filing of $1,000.00; (b) various household items; (c) business fixtures and equipment totaling $1,102.00 and business inventory of $15.00, owned and used for the Debtor's business as a self-employed Hairstylist; and (d) a 2000 Ford Explorer, valued by the Debtor at $7,110.00, subject to a Keybank N.A. secured claim of $5,496.00, based upon an October 2004 loan. The Debtor also indicated in her Statement of Financial Affairs ("SOFA") that in January 2005 for no consideration, she transferred a diamond ring (the "Ring") purchased for $4,500.00 to her ex-boyfriend Kenneth C. Kinney ("Kinney").

Kenneth W. Gordon, Esq. was appointed as the Debtor's Chapter 7 Trustee (the "Trustee"). Section 341 Meetings of Creditors were held on November 27, 2007 and December 18, 2007, and the Debtor received a discharge on January 29, 2008.

On January 1, 2009, the Trustee commenced an Adversary Proceeding (the "Ring Adversary Proceeding") against Kinney seeking: (1) the turnover of the cash value of the Ring in the amount of

$4,000.00 as property of the estate under Section 542;[2] (2) the turnover of the value of the Ring pursuant to Article 10 of the New York State Debtor and Creditor Law ("Article 10") and/or Section 548,[3] because Kinney did not compensate the Debtor for the transfer of the Ring and the Debtor was insolvent at the time of the transfer; and (3) attorneys' fees and $250.00 in costs incurred in bringing the Ring Adversary Proceeding.

---

[2]    Section 542(a) provides that:

>  (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542 (2009).

[3]    Section 548(a)(1) provides that:

>  (a)
>   (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted[.]

11 U.S.C. § 548 (2009).

**Page 3**

In his Complaint (the "Complaint"), the Trustee alleged that: (1) at the Debtor's initial Section 341 Meeting of Creditors on November 27, 2007, she testified that she had returned the Ring to Kinney, who had purchased it and given it to her, when their intimate relationship ended; (2) on a number of occasions the Trustee had requested that Kinney turn over the Ring or its cash value of $4,000.00 to the Trustee; (3) on January 3, 2008, Kinney indicated to the Trustee that the Debtor had returned the Ring to him, but that he no longer had the Ring, having "probably sold it;" (4) in conflicting letters to the Trustee, Kinney's attorney asserted that the Debtor had returned the Ring, worth approximately $4,500.00 to Kinney, and that while Kinney was not aware of the location of the Ring, he believed it was still in the Debtor's possession; (5) in a letter dated June 3, 2008, Kinney's attorney informed the Trustee that Kinney did not have possession of the Ring, because he had sold it to a third party in 2006; and (6) despite his numerous requests, the Trustee had not received the Ring or its $4,000.00 cash value.

On February 12, 2009, Kinney interposed an Answer, which denied the substantive allegations of the Complaint and asserted affirmative defenses that: (1) the Debtor could not be liable under Section 548, because the Debtor received the Ring in January 2005, more than one year prior to the Debtor's petition; (2) Kinney was

**Page 4**

not an insider under Section 548, because he had vacated the Lake Road Property a few days prior to the return of the Ring, which was the Debtor's way of permanently terminating their relationship, and the Debtor and Kinney had not spoken since that time, other than in connection with a state court lawsuit commenced by Kinney;[4] and (3) the Debtor was not insolvent at the time of the transfer of the Ring.

On June 17, 2009, the Court conducted a trial (the "Trial") at which Kinney was the only witness who testified.

At the Trial, Kinney testified that: (1) he and the Debtor began dating in 1995 or 1996; (2) in 1997, he and the Debtor purchased the Lake Road Property, which is the subject of the State Court Action, and they moved into it together; (3) he purchased the Ring for $4,500.00 and gave it to the Debtor; (4) on January 11, 2005, around the time Kinney vacated the Lake Road Property, the Debtor returned the Ring to Kinney as an indication that the relationship between the Debtor and Kinney was finished; (5) he did not give any consideration to the Debtor for the return of the Ring; (6) in approximately October 2004 Kinney signed over to the Debtor

---

[4] Kinney filed a Complaint, dated August 22, 2005, against the Debtor in Monroe County Supreme Court (the "State Court Action") seeking relief, including a judgment against the Debtor requiring her to convey to Kinney a fifty percent (50%) interest in the Lake Road Property, an accounting of money and items she received from Kinney, and costs and disbursements relating to the State Court Action.

Page 5

the title to a Ford Explorer he owned, which had a lien against it for a few thousand dollars, and which the Debtor used around that time as collateral to obtain a loan from Keybank for approximately $17,000.00; (7) while he and the Debtor lived together, he paid almost all of the monthly bills incurred in connection with the Lake Road Property; (8) he was aware that the Debtor had several credit cards of her own, and while they lived together at the Lake Road Property, Kinney observed her writing payment checks for the accounts; and (9) when the Debtor gave Kinney back the Ring, he had no knowledge of: (a) the balances on the Debtor's credit card accounts, or the amounts she paid against them; or (b) any debts the Debtor may have incurred in connection with her hair salon business, although Kinney also testified that he paid for the initial renovation of the salon.

Kinney gave further testimony as to his purchase of the Ring and the whereabouts of the Ring, including that: (1) at his deposition on January 10, 2006 in the State Court Action, he stated that he had purchased the Ring for $4,300.00 from Kay Jewelers in Rochester, New York; (2) he had at one time indicated to his attorney in the Ring Adversary Proceeding that the Debtor may be in possession of the Ring; (3) alternately, he did not remember ever stating that he believed the Debtor may have the Ring; (4) when he received the Ring back from the Debtor he gave it to his bookkeeper

Page 6

and asked her to sell it and pay the bills of his business with the proceeds; (5) he agreed that he had stated to an assistant at the Trustee's office that he did not know the whereabouts of the Ring and probably sold it, at a time when he did not speak with his bookkeeper to confirm the whereabouts of the Ring; (6) he did speak with his bookkeeper sometime in early 2009 and learned that she still had the Ring; (7) he also spoke with the Debtor approximately one (1) year prior to the Trial, when the Debtor informed him that the Trustee was attempting to determine the location of the Ring; (8) at no point prior to the Trial had Kinney informed the Trustee that he was in possession of the Ring; and (9) his bookkeeper was in possession of the Ring from approximately January 2005, when Kinney gave it to her to sell, and two (2) days prior to trial, when he retrieved it for purposes of bringing it to the Trial.

Upon Kinney's request at Trial that the Complaint be dismissed, the Court orally held that Section 548 was inapplicable, because the January 11, 2005 transfer of the Ring was not made within two (2) years of the petition.

With regard to the remaining claim for turnover under Article 10, the Trustee relied at Trial upon the Debtor's Schedules, including the Debtor's Schedule B - Personal Property, totaling $10,914.00 and Amended Schedule F - Creditors Holding Unsecured Nonpriority Claims, totaling $48,484.00, to demonstrate that the

Page 7

Debtor was insolvent. The Trustee stated at the Trial that the Schedules clearly demonstrated the Debtor's insolvency at the time of her petition, and, notwithstanding that some dates for the scheduled unsecured claims were subsequent to the transfer of the Ring, based upon the Schedules, the Debtor must have also been insolvent at the time of the transfer.

Kinney alleged at Trial that some of the scheduled dates for when the Debtor incurred a number of her unsecured debts may have been incorrect, but neither party presented any credible and admissible evidence, such as credit card billing statements, to prove the Debtor's actual unsecured debts on the date of the transfer of the Ring.

At Trial, before Kinney testified regarding the gift of the Ford Explorer, the Court orally held that, while the Trustee bears the ultimate burden of proof as to the causes of action set forth in the Complaint, including the various elements that are required to be proved, the Trustee, based upon the Schedules, had: (1) made out a prima facie case under Article 10 that the Debtor was insolvent at the time of the transfer of the Ring; and (2) shifted the burden of proof to Kinney to prove the Debtor's solvency as of January 11, 2005.

The Court also sustained the Trustee's objection to Kinnney's purported appraisal of the Ring as hearsay, and orally ordered the

**Page 8**

Debtor, who was not called by either party to testify at the Trial, nor was she present at Trial, to confirm the identity of the Ring that was produced by Kinney at the Trial. The Court adjourned the Ring Adversary Proceeding to the Court's Trial Calendar on July 1, 2009 for oral argument with regard to any post-trial memorandums, and to establish the identity and value of the Ring.

On June 30, 2009, Kinney filed a Memorandum of Law for Defendant (the "Memorandum"). In the Memorandum, Kinney argued that: (1) because the Debtor had filed for bankruptcy more than one (1) year after the transfer of the Ring, the Trustee did not have a cause of action under Section 548; (2) the only claim that could potentially be maintained by the Trustee was under Section 271 of Article 10 ("Section 271"), which defines insolvency as "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they became absolute and matured;" (3) at Trial, there was no testimony: (a) that the transfer of the Ring rendered the Debtor insolvent; (b) confirming the Debtor's actual debts at the time of the transfer; or (c) to establish the value of the Ring; (4) under Section 273 of Article 10 ("Section 273"), the intent of the transferor and transferee is not relevant if the transfer was made without fair consideration; (5) under Section 272 of Article 10, "fair consideration" is given for a transfer when there is a

**Page 9**

reciprocal transfer of property or an antecedent debt is satisfied; (6) Kinney arguably gave consideration (the "Memorandum Consideration") to the Debtor for the Ring, because he: (a) previously purchased and paid for the Ring; (b) transferred a truck to the Debtor, which was worth $17,000.00, with only a few thousand dollars owed against it; and (c) paid a significant amount of money in improvements, upkeep and related expenses for the Lake Road Property, which was titled solely in the Debtor's name; (7) there was no testimony that Kinney or the Debtor intended to defraud the Debtor's creditors, only that the transfer of the Ring was an actual and symbolic sign of the termination of the relationship of the parties; and (8) there was no evidence presented at Trial that demonstrated that the Debtor expected to incur debts beyond her ability to repay them in contravention of Section 275 of Article 10 ("Section 275"), which typically includes a conveyance under Section 276 of Article 10, made with the intent to hinder, delay or defraud creditors.

At adjourned hearings held on July 1, 2009 and July 15, 2009 the Trustee indicated that he: (1) had confirmed with the Debtor that the Ring was the ring she received from Kinney and returned to him in 2005; (2) had the Ring appraised and received a cash offer of $900.00; and (3) was seeking $2,500.00 in attorneys' fees, as

**Page 10**

well as the $250.00 in costs as previously specified in the Complaint.  On July 15, 2009, the Court reserved decision.

## DISCUSSION

**A.    Section 548**

The Court reaffirms its oral ruling at Trial that the transfer to Kinney of the Ring is not avoidable under Section 548, because the Debtor's January 11, 2005 transfer of the Ring was not made within two (2) years prior to the date of the filing of the Debtor's petition on October 30, 2007.  Section 548(a)(1) provides that: "[t]he trustee may avoid any transfer . . . of any interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition . . . "  Section 548(a)(1) contains a footnote as follows: "Ed. Note: Section 1406(b)(2) of the 2005 Act provides: Avoidance Period- The Amendment made by section 1402(1) [of the 2005 Act][changing "one year" to "2 years" in paragraphs (a)(1) and (b)(1) of Code section 548] shall apply only with respect to cases commenced under title 11 of the United States Code more than 1 year after the date of the enactment of this Act."  The Debtor's petition was filed on October 30, 2007, more than one (1) year after the enactment of the 2005 Code, thus a two (2) year look-

**Page 11**

back period applies. The Debtor's January 11, 2005 transfer was made more than two (2) years prior to the filing of the Debtor's petition filing. Therefore, Section 548 is not applicable.

B.  **New York Debtor & Creditor Law**

The Trustee has also asserted that he is entitled to recover the Ring or its value under Article 10. Section 273 provides that: "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

1.  **Fair Consideration**

As a threshold matter, this Court finds that the Debtor's transfer of the Ring to Kinney was made without fair consideration for the following reasons: (1) the Debtor scheduled the transfer of the Ring in her SOFA and indicated that there was "no value received" for the transfer, an allegation that was not contested by any credible evidence at the Trial, and Kinney testified at the Trial that no consideration was given to the Debtor for her transfer of the Ring; (2) Kinney's original purchase of and payment for the Ring was consideration exchanged with the jewelry store, not the

Debtor, as alleged in the Memorandum; and (3) the Court is not persuaded by Kinney's assertions in the Memorandum that Kinney's signing over title to the Debtor of a Ford Explorer, paying for numerous expenses, including the renovation of the Debtor's business and certain living expenses, or any other action taken by Kinney, were actual or intended consideration for the transfer of the Ring, because: (a) Kinney conceded at the Trial that no consideration was given for the Ring; and (b) Kinney stated at the Trial and in his Memorandum that the Ring was transferred as an indication that the relationship between the Debtor and Kinney was finished, not as consideration for any debt or in repayment of the Memorandum Consideration.

### 2. <u>Insolvency</u>

The remaining issue under Section 273 is whether the Debtor was insolvent or rendered insolvent by the transfer of the Ring.

Section 271(1) states that: "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Insolvency under Section 271 is equivalent to insolvency in the bankruptcy sense,

Page 13

specifically in the case at hand, whether the aggregate of the Debtor's property at a fair valuation on January 11, 2005 was sufficient to pay her debts, exclusive of any property transferred, concealed, or removed with intent to hinder, delay or defraud her creditors. Seligson v. New York Produce Exchange, 394 F.Supp. 125 (S.D.N.Y. 1975); U.S. v. 58th Street Plaza Theatre, Inc., 287 F.Supp. 475 (S.D.N.Y. 1968).[5]

     This Court hereby reverses its oral ruling at Trial, made before Kinney offered any testimony regarding his gift of a Ford Explorer to the Debtor, that: (1) based upon the Schedules, and there being no other evidence presented at Trial by the Debtor as to her finances, the Trustee had: (a) made out a prima facie case under Article 10 that the Debtor was insolvent at the time of the transfer on January 11, 2005; and (b) had shifted the burden of

---

[5] The Court in Seligson v. New York Produce Exchange cites U.S. v. 58th Street Plaza Theatre for the proposition that insolvency under Section 271 is insolvency in the bankruptcy sense, and further specifies that insolvency is to be determined under Section 1(19), which, in the Bankruptcy Act, set forth the definition of insolvency. This Court notes that the current Bankruptcy Code includes the definition of insolvency in Section 101(32), which, in addition to the substantially similar language both cited in Seligson and Section 1(19), Section 101(32) additionally provides that insolvency shall be determined exclusive of "...101(32)(A)(ii) property that may be exempted from property of the estate under section 522 of this title...." This Court adopts as the test for determining insolvency under Section 271 the substantially similar language stated in Seligson, Section 1(19), 101(32)(A)(I), and as stated in the instant decision, which conforms to the balance sheet test for insolvency in a bankruptcy sense as cited in Seligson and U.S. v. 58th Street, since this Court cannot presume that the addition of the exclusion of exempt property from the definition of insolvency in 101(32)(ii) was expressly meant to overrule Seligson and U.S. v. 58th Street and change the notion of the balance sheet test for insolvency and definition of insolvency under Section 271 as stated in those cases.

proof to Kinney to demonstrate the Debtor's solvency at the time of the transfer; and (2) the Trustee continued to bear the ultimate burden of proof of insolvency if Kinney succeeded in shifting the burden of proof back to the Trustee.

In fact, a review of the Schedules indicate that she was solvent on the date of her petition. Her total assets of $172,914.00 exceeded her total liabilities of $172,312.00 by $602.00. In revisiting the Summary of Schedules in connection with this Decision & Order, this Court realized that it must have transposed the applicable numbers at Trial, believing that they showed the Debtor to be insolvent by $602.00.

With regard to the issue of insolvency, neither party elected to depose the Debtor and subpoena her relevant financial records or call her to testify at Trial. This would have provided the Court with the kind of credible evidence that would have allowed it to make a more informed determination of her financial condition on the date of the transfer of the Ring, which was more than two and one-half years before the filing of her petition.

This Court finds, based upon: (1) all of the evidence before it, including credible evidence provided by Kinney at Trial; and (2) reasonable assumptions and inferences, that the Trustee has failed

to meet his ultimate burden to prove that the Debtor was in fact insolvent at the time of the transfer of the Ring to Kinney.

What the Court knows for sure about the Debtor's finances on January 11, 2005, is that: (1) she owned the Lake Road Property, some business and personal property, including a Ford Explorer; (2) she had two mortgages on the Lake Road Property, a loan against the Ford Explorer, and some personal and business debt; and (3) $13,831.00 of her scheduled, unsecured non-priority debt was clearly incurred after January 11, 2005.

Assuming that, on January 11, 2005: (1) the value for the Lake Road Property and the mortgage balances were the same as those scheduled by the Debtor, since there is no other credible evidence of value or the mortgage balances;[6] (2) the Debtor obtained a 100% loan on the value of the Ford Explorer of $17,000.00 in October 2004, three months before the transfer of the Ring, as testified to by Kinney, which is the best case assumption for the Trustee; (3) the Debtor had incurred all of her scheduled, unsecured debt, except for the $13,831.00 clearly scheduled as incurred after January 11, 2005; and (4) the Debtor had the same other personal and business property, including the Ring, then her assets and liabilities would

---

[6] Although it is likely that the mortgage balances were higher, the tax assessment for the Lake Road Property indicates a value in excess of $175,254.00.

**Page 16**

be as set forth below, which would indicate that she was solvent on January 11, 2005:

| Real Property | $ 162,000.00 |
|---|---|
| Vehicle | $ 17,000.00 |
| Personal Property, including the Ring | $ 4,704.00 |
| | |
| TOTAL ASSETS | $ 183,704.00 |

| Mortgages | $ 118,332.00 |
|---|---|
| Vehicle Loan | $ 17,000.00 |
| Unsecured Debts | $ 34,653.00 |
| | |
| TOTAL LIABILITIES | $ 169,985.00 |

The Trustee has also failed to establish that the transfer of the Ring is avoidable under Section 275 as a conveyance made by a person about to incur debts. Section 275 of Article 10 provides that: "[e]very conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors." Under New York law, a transfer by a debtor is deemed constructively fraudulent under Section 275 if it is made without fair consideration, and one of the following conditions is met: (1) the transferor is insolvent or will be

rendered insolvent by the transfer in question; (2) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital; or (3) the transferor believes that it will incur debt beyond its ability to pay. In re Jacobs, 394 B.R. 646 (E.D.N.Y. 2008); In re Allou Distributors, Inc., 387 B.R. 365 (E.D.N.Y. 2008). In the Ring Adversary Proceeding, the Trustee produced no credible evidence to demonstrate the existence of the second or third alternative grounds under Section 275.

## CONCLUSION

The Trustee's causes of action seeking the turnover of the Ring, or its value, and attorney's fees and costs, are in all respects denied.

**IT IS SO ORDERED.**

                                                     /s/
                                **HON. JOHN C. NINFO, II**
                                **U.S. BANKRUPTCY JUDGE**

**Dated: September 30, 2009**